**STATE of Tennessee, Appellee,**

v.

**Donnie Edward JOHNSON, Appellant.**

Supreme Court of Tennessee,
at Jackson.

Dec. 21, 1987.

Certiorari Denied April 4, 1988.
See 108 S.Ct. 1303.

**155**

Jeff A. Crow, Jr., W. Clark Washington (original counsel), Memphis, J. Russell Heldman, James L. Weatherly (substitute counsel), Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., James W. Thompson, Ass't Atty. Gen., Nashville, for appellee.

## OPINION

HARBISON, Chief Justice.

Appellant was convicted of murder in the first degree in connection with the suffocation of his wife, Connie Johnson and sentenced to death by electrocution. After reviewing the briefs and arguments of counsel and the entire record, we affirm the conviction and the sentence.

At the time of the trial, appellant was thirty-four years of age. The homicide occurred on December 8, 1984. For three or four years prior to that time, appellant had been the manager and a salesman for a camping equipment center in Memphis. His wife had also worked at the center for a period of twelve to eighteen months, but she was not so employed at the time of her death. Appellant had adopted a daughter of his wife by a former marriage, and the couple had a son who was about four years old at the time of the trial.

There had been some difficulties in the marriage, and appellant's wife had from time to time threatened to separate from him. There is no evidence that appellant had ever seriously injured his wife prior to December 1984. He had admittedly been unfaithful to her although he denied involvement with any other woman at the time of his wife's death. More than a year and a half prior to her death, Mrs. Johnson had purchased a policy of life insurance in which appellant was named as primary beneficiary and her sister as contingent beneficiary. Following the death of Mrs. Johnson, both her sister and appellant made claims for the policy proceeds of fifty thousand dollars.

Mrs. Johnson suffered a most terrible death by suffocation. From this record there is no question but that appellant or one Ronnie McCoy murdered her. Appellant did not testify until the sentencing hearing. At the guilt hearing McCoy testified that appellant killed Mrs. Johnson at appellant's place of employment in the ear-

ly evening of Saturday, December 8, 1984, the time of death being estimated at between 6:30 and 7 p.m.

McCoy was a prisoner on work release at the place where appellant was employed. Appellant transported McCoy to and from work each day, checking him in and out at the Shelby County Penal Farm near Memphis. Appellant did so on the date of the homicide. McCoy and two employees of the penal farm testified that appellant transported McCoy to the penal farm after work on that date and checked him in at about 7:17 p.m.

McCoy testified that he left appellant and Mrs. Johnson alone in the office of the camping center while McCoy attended to some chores preparatory to leaving the place of business for the day. He was gone for some ten to fifteen minutes, and when he returned to the office, he testified that he found Mrs. Johnson strangled or suffocated to death.

It is not necessary here to give the horrible details of the manner of her death. It is sufficient to state that a large plastic garbage bag had been forced into her mouth, resulting in her strangulation and asphyxiation. She bled from the nose and ears, and traces of blood were found on a couch in the office where her death occurred. There was testimony that she would have been conscious during the terrifying ordeal and that from one to four minutes would have elapsed before she expired.

Appellant did not testify until the sentencing hearing after he had already been found guilty of murder in the first degree. At that time he denied killing his wife and attempted to place responsibility upon McCoy. He testified that he left McCoy and Mrs. Johnson alone in the sales office for a few minutes. He had given Mrs. Johnson about $250 earlier that morning and about $200 again that afternoon for purposes of Christmas shopping. It was his contention that McCoy tried to rob Mrs. Johnson and killed her in the process.

Appellant and McCoy each testified to being afraid of the other. In all events, however, they collaborated, willingly or otherwise, in transporting the body of Mrs. Johnson in her 1981 Ford van from the sales office to a shopping center a few miles away. They also placed inside the van her broken spectacles, her shoes, her coat and some earrings which had become dislodged in her struggle for breath. They parked the van on the edge of a large shopping center and left it there. Each testified that the other drove the van from the office to the shopping center. Both agreed that appellant then transported McCoy to the penal farm in appellant's pick-up truck. McCoy testified that he had driven the truck to the shopping center following appellant who was driving the van.

In all events the van was left on the parking lot overnight. A security officer at one of the retail stores noted its presence, and in the early morning hours of December 9 he placed a ticket on the vehicle but did not open it.

Appellant called his employer near 11 a.m. on the morning of Sunday, December 9, pretending to make inquiry about his wife. He said that she had not come home on the previous evening and had not picked up their children from the home of appellant's brother. Appellant had spent the night at the sales office and early on the morning of December 9 had delivered a trailer to a customer at a camp site. Upon returning from that trip, he placed the call to his employer.

The employer, Mr. James Force, and his wife were advised by appellant that Mrs. Johnson was supposed to have gone Christmas shopping on the previous evening. Mr. and Mrs. Force agreed to assist in finding her. In the course of doing so they found her van, which was well known to them, at the shopping center. Upon opening the van, they found the lifeless body of Mrs. Johnson. They immediately reported to security personnel at the mall. Investigating police officers arrived in a short time.

Both Mr. and Mrs. Force and appellant gave statements to the police. Appellant denied any involvement in the death of his wife. He made no mention of having

known that McCoy killed her and denied that he had any knowledge of when or how her van had reached the premises of the shopping mall.

In addition to the direct testimony of McCoy, there was other strong evidence implicating appellant in the homicide. Appellant had called one Barry Pfister at about 9 p.m. on Saturday evening to inquire about his wife. He told Pfister that he and his wife were coming to the sales office to try to work out their differences. He asked Pfister to observe if and when Mrs. Johnson arrived and to advise her that appellant was on his way.

At some time during the evening, appellant called on a former girl friend, Debbie McKee, who was working at a local motel. She had called him earlier in the evening, and he drove to her place of employment at some time between 7:30 and 8 p.m. Appellant admitted to the police that he had previously had an affair with Ms. McKee but denied that there was any sexual relationship between them at the time of the homicide.

When Mrs. Johnson's van was opened by police at the shopping mall, it did not contain ignition keys. Mrs. Johnson's set of ignition keys, together with her hairbrush and some other personal items, were found behind the seat of appellant's truck when it was seized following the discovery of Mrs. Johnson's body. Sisters of Mrs. Johnson testified that they could identify the keys which were the only set of keys to the van which Mrs. Johnson had.

The only witnesses called by appellant at the guilt phase were an insurance agent who testified about the life insurance claims made under Mrs. Johnson's policy and one Paul Adams, manager of a tent shop at the camping center. He testified that appellant had come to the door of his shop at about 7 p.m. on Saturday, December 8.

■ Even if McCoy were an accomplice, his testimony at the guilt phase was corroborated by independent evidence. As previously stated, appellant did not testify or give any version of the facts until the sentencing phase in which he attempted to mitigate his own involvement and to place the primary responsibility for the homicide upon McCoy. His testimony at the sentencing phase was, to say the least, unconvincing. He offered no explanation as to why he did not report McCoy's involvement in the homicide, if it actually occurred, in either of the two statements which appellant had given to the police on December 9 and December 11, 1984.

The evidence to support the conviction of appellant of murder in the first degree was legally sufficient beyond question. This issue, one of four raised by the original counsel for appellant, is without merit.

■ Appellant had previously been convicted of armed robbery and aggravated assault. The jury found his previous convictions of violent felonies to constitute an aggravating circumstance and also found that the murder was especially cruel and involved torture or depravity of mind. *See* T.C.A. §§ 39-2-203(I)(2) and (5). These aggravating circumstances were clearly established by the evidence, and there was no substantial proof of any mitigating circumstances.

The homicide was inhuman and brutal to an almost indescribable degree. Nevertheless, the exhibits which were offered, a few of them including photographs of the victim, were not gruesome or inflammatory. The trial judge excluded some photographs which he felt might be inappropriate, but those which the jurors were permitted to examine did no more than illustrate the medical testimony and the evidence of lay witnesses. The issue raised by counsel for appellant as to the photographs of the decedent is without merit.

■ Original counsel for appellant challenged the practice of using "death-qualified" jurors and the challenging for cause by the State of those jurors who stated that they could not consider the death penalty. This issue was considered by the United States Supreme Court in the case of *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and found to be without merit. This Court had reached a similar conclusion in the case of

*State v. McKay,* 680 S.W.2d 447 (Tenn. 1984). Original appellate counsel did not challenge the excusing of any jurors for cause under *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), but substitute counsel did raise this issue as to some jurors. We have read carefully the examination of the prospective jurors and find the issue without merit. Each juror who was excused stated without qualification that he or she could not consider the imposition of the death penalty and would not do so under any circumstances.

The final question raised by original appellate counsel was the admission of testimony concerning previous misconduct of the appellant. At the guilt phase, of course, this was not offered for purposes of impeachment since he did not take the stand at that hearing.

■ Through the witness Barry Pfister there was testimony that appellant had been found in a compromising position with a woman employee of the camping center a few weeks prior to the homicide. Debbie McKee testified that she had dated appellant twice, and his own statement to police officers recited that he had had an affair with Ms. McKee.

All of this evidence tended to bear upon appellant's possible motive for the homicide and his relationship with the victim. We find no error in its admission; but in all events, in our opinion, its admission could not possibly have affected the results of the trial.

■ The witness McCoy was permitted to testify that he was afraid of appellant because appellant carried a pistol and because appellant had represented himself as having been a member of a motorcycle gang. This testimony, again, was not offered to impeach the credibility of appellant but simply to explain McCoy's own alleged fear of appellant and his reason for not reporting the homicide to the police for some time after it occurred.

■ At the sentencing hearing appellant did testify. On direct examination he denied that he had ever harmed any person, including his wife. He thereby opened for

legitimate cross-examination his previous involvement in a fight and other acts of violence. We find no error in the admission of this testimony.

Original counsel for appellant were permitted to withdraw, and substitute counsel were appointed by the Court to represent appellant at oral argument. They filed a supplemental brief, raising eleven additional issues. While the Court is appreciative of their efforts and diligence, we find no merit to any of the issues which they have suggested. Most of them involve matters as to which no objection was made at the trial and no assignment of error contained in the motion for a new trial. Nevertheless, we will briefly consider those issues which appear to be most seriously urged.

■ The first of these concerns a statement given by appellant to police on December 11, 1984, after having been given warnings and instructions consistent with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). An attorney representing appellant was present when the statement was given.

Twice during the course of reading the statement at trial a police officer referred to his notations thereon that appellant appeared to be nervous and asked to confer with his attorney.

■ Insofar as the statement referred to the demeanor of appellant at the time the statement was given, we find no error. Generally where the answers to questions are admissible, the demeanor and behavior of the person giving the statement may be commented upon by witnesses who were present. *See Commonwealth v. Borodine,* 371 Mass. 1, 353 N.E.2d 649 (1976), *cert. denied,* 429 U.S. 1049, 97 S.Ct. 760, 50 L.Ed.2d 765 (1977).

The objection which was made at trial was inexact and not specific. Insofar as there was objection to appellant's conferring with his counsel, the objection probably was well taken. The matter was not pursued, however, in the motion for a new trial and properly should be deemed waived. In all events, in our opinion, any error in these brief references to appellant's consulting with counsel was harmless beyond a reasonable doubt and could

not have had any effect upon the result of the trial.

The same is true with respect to references to this matter made by the District Attorney in closing argument. The point of the argument was that appellant admitted being at or near the scene where his wife's body was found although in his statement this fact was given an innocent cast. In his statement appellant insisted that he had not seen his wife's van when he visited the shopping mall in the evening on the date of the homicide.

■ Counsel also insists that the trial court erred in admitting evidence that appellant refused to consent to a search of his pick-up truck and that it was necessary for police officers to obtain a search warrant.

This testimony was offered in rebuttal after counsel for appellant on cross-examination had elicited information that defense counsel had voluntarily turned over to the police the ring containing the keys to Mrs. Johnson's van. In that context, after appellant had attempted to create the impression that he voluntarily cooperated with the police, the evidence in rebuttal was relevant and admissible.

There is authority that the refusal of an accused to consent to a search without a warrant may not be used against him to imply guilt. *E.g. Elson v. State,* 659 P.2d 1195 (Alaska 1983); *People v. Stephens,* 133 Mich.App. 294, 349 N.W.2d 162 (1984); *Garcia v. State,* 103 N.M. 713, 712 P.2d 1375 (1986). This rule, however, in our opinion, would not prevent the use of rebuttal testimony to contradict a false impression created by an accused that he was cooperating voluntarily with investigating authorities. In all events, in the context of this case, the evidence was insignificant. Its admission was harmless beyond a reasonable doubt.

■ It is insisted by counsel that the trial court erred in permitting the prosecuting attorney to express his personal opinion concerning the credibility of the witness Ronnie McCoy. This matter was not objected to at the time or pursued in the motion for new trial.

It is, of course, improper for an attorney to express his or her personal opinion in the course of final summation. *See State v. Hicks,* 618 S.W.2d 510 (Tenn.Crim.App. 1981). In the present case, however, the argument concentrated upon the evidence in the record concerning McCoy and his credibility and was made in response to attacks upon the witness by counsel for appellant in his closing argument. The form of the argument was in the nature of a summary to the jurors of the evidence in the record rather than personal opinion of the prosecutor concerning matters outside the record. In addition, the trial judge clearly charged the jurors that statements of counsel were not to be considered as evidence. We find no merit to this issue.

■ At the sentencing phase one of the prosecuting attorneys cross-examined appellant concerning a prior conviction for passing fraudulent checks. This cross-examination was not offered in an effort to prove a violent felony as an aggravating circumstance. Instead it was used to attack the credibility of appellant as a witness since the conviction involved dishonesty. *See State v. Morgan,* 541 S.W.2d 385 (Tenn.1976). There was no objection at the time, and the matter was not pursued in the motion for a new trial.

■ While all of the procedural requirements for this method of impeachment were not followed, the absence of an objection requires that the matter be deemed to have been waived. In all events, this cross-examination occurred at the sentencing hearing, after appellant had already been found guilty, and in our opinion it could not have had any effect upon the decision of the jurors as to the appropriate punishment. We find no merit to the contention of counsel that the prior conviction should have been proved by a certified copy of a court record inasmuch as appellant admitted its occurrence.

■ In proving appellant's prior convictions for armed robbery and aggravated assault, the State introduced certified copies of judgments. There was no oral testimony concerning the sentence imposed for these offenses. The certified records themselves did show the sentences and were passed to the jurors for their examination.

**160**

In the absence of either an objection or a motion for a new trial, we find no reversible error. To the extent that there was error in this regard, in our opinion it was entirely harmless.

■ In order to enable an expert witness to make a fingerprint comparison, the District Attorney introduced in evidence, without objection, the record of appellant's arrest in connection with the present case.

In many contexts, mere arrests, like indictments, are not admissible for the purpose of establishing guilt. That was not the purpose for which the record was offered in the present case, however, because appellant's fingerprints were a part of the record introduced and were relevant for purposes of comparison by the expert witness. We find no merit to the issue.

A number of questions are raised concerning the final arguments of the prosecuting attorneys. We have examined each of these and find no reversible error. The segments referred to on appeal were neither objected to nor preserved in the motion for a new trial. They were within the latitude allowed attorneys in arguing to a jury. There was no improper reference to the failure of appellant to take the stand. There was one inaccurate statement concerning the death penalty statutes, but the statutes and the applicable rules of law were accurately set forth in the written charge given by the judge to the jury.

We have carefully examined all of the other issues raised by counsel for appellant and find none of them to contain any reversible error.

The judgment of the trial court is affirmed at the cost of appellant. The sentence will be carried out as provided by law on April 28, 1988, unless stayed or otherwise ordered by this Court or by other proper authority.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.