*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

DONNIE E. JOHNSON,

　　　　　*Petitioner-Appellant,*

　　*v.*

RICKY BELL, Warden,

　　　　　*Respondent-Appellee.*

Nos. 05-6925; 06-6330

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-03052—Bernice B. Donald, District Judge.

Argued: November 19, 2009

Decided and Filed: May 17, 2010

Before: BOGGS, NORRIS, and CLAY, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jennifer Lynn Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Paul R. Bottei, Christopher M. Minton, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Alice B. Lustre, Michael E. Moore, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

　　　NORRIS, J., delivered the opinion of the court, in which BOGGS, J., joined. CLAY, J. (pp. 12-18), delivered a separate dissenting opinion.

————————————

**OPINION**

————————————

　　　ALAN E. NORRIS, Circuit Judge. In 1985 petitioner Donnie E. Johnson was sentenced to death for the murder of his wife. Since that time he has initiated numerous legal proceedings in both state and federal court challenging his conviction. In 2003 we

1

considered a petition for a writ of habeas corpus, 28 U.S.C. § 2254, and denied relief. *Johnson v. Bell*, 344 F.3d 567 (6th Cir. 2003).  Thereafter petitioner filed two motions for equitable relief in federal district court, which were denied.  In this consolidated appeal, we review each of those decisions.

In case number 05-6925, petitioner's motion for equitable relief contended that the prosecution engaged in misconduct by not revealing to defense counsel that it had granted a key witness, Ronnie McCoy, a deal in exchange for his testimony.  According to petitioner, by allowing McCoy to testify that he had not received special consideration, the prosecution knowingly offered perjured testimony at trial and perpetrated fraud on the district court during the subsequent habeas corpus proceedings by submitting affidavits from McCoy and the prosecutor denying the existence of a deal.

In case number 06-6330, petitioner's motion alleged that the prosecutor improperly vouched for McCoy during closing argument.

**I.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, places restrictions upon individuals seeking to file second or successive habeas corpus applications: claims presented in a prior application must be dismissed; and those claims omitted from a previous application can be raised in a subsequent application only if there has been a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, or the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the claim itself, if proven, would establish by clear and convincing evidence that no reasonable juror would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2244(b)(2).  Moreover, before the district court may entertain a second application for a writ of habeas corpus, the petitioner must first seek an order from the appropriate court of appeals authorizing it.  28 U.S.C. § 2244(b)(3)(A).

Petitioner did not seek leave to file a successive application. Instead he filed the instant motions pursuant to Fed.R.Civ.P. 60(b) and the inherent equitable powers conferred on the federal courts by Article III of the Constitution.  In *Gonzalez v. Crosby*, 545 U.S. 524

(2005), the Court discussed the interplay between § 2244(b) of AEDPA and Rule 60(b), noting that "for purposes of § 2244(b) an 'application' for habeas relief is a filing that contains one or more 'claims.'" *Id.* at 530. And, such "claims" as contemplated by AEDPA represent "an asserted federal basis for relief from a state court's judgment of conviction." *Id.* Such claims cannot be collaterally attacked through a Rule 60(b) motion. However, the rule continues to have limited viability in the habeas context:

> In most cases, determining whether a Rule 60(b) motion advances one or more "claims" will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify. A motion can also be said to bring a "claim" if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief. That is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim *on the merits*, but some defect in the integrity of the federal habeas proceedings.

*Gonzalez*, 545 U.S. at 531-32 (footnotes omitted) (emphasis original); *see also Post v. Bradshaw*, 422 F.3d 419, 424-25 (6th Cir. 2005). The Court glossed the final sentence of the passage just quoted in a footnote:

> The term "on the merits" has multiple usages. We refer here to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.

*Id.* at 532 n.4 (citation omitted).

As mentioned, the motions for equitable relief under review cited two sources of authority: first, what petitioner terms the district court's "plenary inherent Article III equitable powers to revise or amend a judgment in the interest of justice"; second, Rule 60(b). The district court declined to base its authority upon Article III and instead recognized that Rule 60(b), which is inherently equitable in nature, empowers district courts to revise judgments when necessary to ensure their integrity. We endorse this approach. Rule 60(b)(6) provides that a district court may grant relief from judgment "for any other

reason that justifies relief." This provision confers upon the district court a broad equitable power to "do justice." Particularly in light of the approach taken by Supreme Court in *Gonzalez*, Rule 60(b) represents the sole authority, short of a successive application approved by this court, under which a district court may entertain a challenge to a prior denial of habeas relief.

Before we turn to the substance of this appeal, we must attend to a jurisdictional issue. Just as it places limitations upon successive petitions, AEDPA restricts a petitioner's right to bring an appeal to this court. Before he may do so, he must first obtain a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c). This court has recently clarified that a COA is necessary not only to appeal the initial denial of a writ of habeas corpus, but also to appeal from the denial of a motion brought pursuant to Rule 60(b). *United States v. Hardin*, 481 F.3d 924, 926 (6th Cir. 2007). In neither of the two appeals now before us did petitioner seek a COA. Rather than dismiss the consolidated appeal on that ground, we will construe his notices of appeal as applications for a COA.

## II.

*A. Case No. 05-6925*

### 1. Claim as Raised in the Original Habeas Petition

In his 1997 petition for a writ of habeas corpus, Johnson raised the issue that he seeks to reinvigorate here: that the prosecution violated the "Sixth, Eighth, and Fourteenth Amendments by knowingly presenting false testimony at the guilt stage and withholding evidence that exculpated Mr. Johnson for Mrs. Johnson's murder."

At trial, McCoy testified that he left petitioner and the victim alone for a few minutes on the night of the murder and, when he returned, he saw Mrs. Johnson's bleeding, dead body.[1] According to McCoy, "I got paranoid," and asked petitioner why he had done it, to which petitioner replied, "It just happened." McCoy then helped petitioner clean up the area, which included retrieving the victim's glasses and shoes, and placed them, along with the body, in a van. As related by the Tennessee Supreme Court, the pair

---

[1]Readers who desire a detailed factual recitation may refer to the opinion of the Tennessee Supreme Court on direct appeal. *State v. Johnson*, 743 S.W.2d 154, 155-57 (Tenn. 1988).

eventually left the van in the parking lot of a shopping mall.  On cross-examination at trial, McCoy testified that, when he was interviewed by defense counsel, he told him that he "knew nothing" of the death of Mrs. Johnson.  He also asserted that he had not received any promises in exchange for his testimony.  This latter statement occurred outside the presence of the jury.

In response to the habeas petition, the State submitted affidavits from prosecutor Kenneth Roach and McCoy.  According to Roach, although he recognized that probable cause existed to charge McCoy with serious crimes related to his role in the murder, "I felt it unlikely that it could be proven that his participation was willing."  Therefore, he decided not to prosecute, a decision that "was unrelated to his testimony."  For his part, McCoy submitted an affidavit stating, "I was given no grant of immunity or made any promises regarding favorable treatment in exchange for my testimony."  Petitioner now contends that these affidavits were false and that the State perpetrated fraud on the district court by submitting them.

The district court denied habeas relief. It noted first that none of the claims related to prosecutorial misconduct were raised in state court.  After a brief discussion of *Brady v. Maryland*, 373 U.S. 83 (1963), and a review of the alleged prosecutorial misconduct, the court found "that petitioner's claim that the prosecution suppressed evidence of a deal with Ronnie McCoy has been procedurally defaulted."  Rather than end there, the court turned to the merits – specifically to the affidavits submitted by Roach and McCoy – before concluding, "[t]he various ambiguous bits of evidence put forward by petitioner are not sufficient to undermine the credibility of the unambiguous sworn denials of every individual with contemporaneous personal knowledge concerning the matter."

### 2. *The Claim Revived as a Rule 60(b) Motion*

On October 13, 2004, petitioner filed a motion for equitable relief, the denial of which is before us as case number 05-6925.  Specifically, he contended that "[r]elief from judgment is warranted given the intervening legal events and proof that this Court's [habeas] judgment was tainted by fraud, misconduct, and/or misrepresentation."  Among

the "intervening legal events" to which petitioner alluded was the Supreme Court's decision in *Banks v. Dretke*, 540 U.S. 668 (2004). *Banks* provided that "[w]hen police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight." *Banks*, 540 U.S. at 675-76. Petitioner characterized his claim as "virtually identical to the circumstances involves in *Banks.*"

In *Banks*, the Court recognized that a petitioner must establish "cause" and "prejudice" for his failure to develop the facts during state-court proceedings. *Id.* at 690-91. To show cause, a petitioner must come forward with evidence that the State suppressed material evidence. *Id.* at 692-93. To show prejudice, the withheld evidence must have been such that it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 698 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)) (internal quotation marks omitted).

The district court denied petitioner's motion. It characterized the claim as involving a combination of improperly withheld *Brady* material and fraud on the court. Turning first to petitioner's contention that he was entitled to relief by *Banks*, the district court noted: "Unlike the petitioner in *Banks*, Petitioner has failed to exhaust his remedies as to this claim in state courts." In *Banks*, the Court reached cause and prejudice after first concluding that petitioner had exhausted his state-court remedies. *Banks*, 540 U.S. at 690. The district court interpreted *Banks* as follows:

> *Banks* stands for the proposition that a habeas petitioner may avoid a procedural bar in federal habeas proceedings with respect to claims which were alleged in state court but were not fully developed due to the conduct of the state. *Banks* does not excuse a habeas petitioner from a procedural bar with respect to claims he has wholly failed to even allege in the state courts, but subsequently decided to make a go at in the federal courts on the basis of evidence available to him prior to state-court proceedings. Accordingly, because Petitioner failed to exhaust his state-court remedies, he has not demonstrated error in this Court's prior finding of procedural default as to this claim, and he is not entitled to relief from judgment on the basis of the Supreme Court's opinion in *Banks*.

The district court did not stop after finding that procedural default barred relief. Instead it turned to the substantive allegations to "provide a means of further distinguishing Petitioner's case from *Banks* while affirming this Court's general conviction that this claim remains devoid of merit." It summarized the facts relied upon by petitioner as follows:

> Petitioner supplements his motion for relief with the affidavit[2] of Wayne Morrow, Ronnie McCoy's probation officer, who, apparently in response to McCoy's affidavit disclaiming knowledge as to why his 1988 presentence report[3] states that he was granted immunity in exchange for his testimony against Petitioner, insists that the presentence report is an accurate reflection of what McCoy stated at that time. Petitioner does not explain his delay in submitting this affidavit in October, 2004, more than five years after the McCoy affidavit was entered in habeas proceedings, nor does he allege that it would have been impossible for him to procure the affidavit during the prior habeas proceedings. Further, . . . the affidavit merely presents one party's contrasting recollection of an interview which occurred more than seventeen years ago . . . . The Morrow affidavit . . . is hardly the compelling evidence of an undisclosed deal that the Supreme Court dealt with in *Banks*, wherein the habeas petitioner offered the affidavits of the actual persons whose participation in the state's case against Banks was suppressed by the state throughout the state-court proceedings.

With respect to fraud on the court, the district court declined to find that any collusion occurred between the prosecutor and McCoy with respect to the affidavits and, in any event, "any fraud . . . was not a fraud directed at the 'judicial machinery' sufficient to compromise the integrity of this Court."

As already discussed, this court will not entertain an appeal from the denial of a Rule 60(b) motion in an AEDPA proceeding unless the petitioner first obtains a COA. *Hardin*, 481 F.3d at 926. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which the

---

[2]Although the district court referred to it as an affidavit, the document in question was styled a "declaration" and was signed by Morrow on September 7, 2004.

[3]The presentence report stated in part, "Defendant was on work release in 1984 when he became involved in a murder case. He stated that he was granted immunity for turning state's evidence."

United States Supreme Court has construed to mean that an applicant must show that reasonable jurists could debate that the petition could have been resolved differently or that the claims raised deserved further review. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Rather than remand to enable petitioner to file an application for a COA, we will construe his notice of appeal as such. Because "[a] Rule 60(b) motion is an appropriate vehicle to bring forward a claim for fraud on the court," *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009), and petitioner has produced a modicum of evidence in support of this claim, we grant his application for a COA.

Fraud on the court consists of conduct: "1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." *Carter*, 585 F.3d at 1011 (citing *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993)). Petitioner has the burden of proving existence of fraud on the court by clear and convincing evidence. *Id.* at 1011-12 (citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)). He has not done so.

As the district court recognized, while there is some evidence that McCoy received favorable treatment based upon his testimony, it falls far short of definitively establishing that a deal with the prosecution did, in fact, occur. With the exception of the presentence report prepared four years after his testimony and the declaration signed by probation officer Morrow some sixteen years later affirming that the statement "that he was granted immunity for turning state's evidence" came from McCoy, the evidence uniformly refutes the existence of a deal. McCoy so testified at trial and he confirmed that testimony nearly a decade later in a sworn affidavit, as did the prosecutor. As the State points out, trial counsel for petitioner, Jeff Crow, submitted an affidavit during the initial habeas proceedings, in which he asserted, "The State made it clear that it would not prosecute Ronnie McCoy for any involvement in the homicide. To my knowledge, this decision was not part of any deal with Ronnie McCoy." Defense counsel nonetheless

asked McCoy about it at trial and McCoy confirmed what counsel had been told by the prosecution.

In sum, petitioner has not come forward with clear and convincing evidence that the prosecution presented intentionally false material to the district court, a prerequisite to establish a viable fraud on the court claim. *Demjanjuk*, 10 F.3d at 348. We therefore affirm the judgment of the district court denying petitioner's Rule 60(b) motion in appeal 05-6925.

*B. Case No. 06-6330*

In June 2004, petitioner filed a second motion for equitable relief, the denial of which is the subject of this appeal. In that motion, petitioner contended that the district court erred when it denied a prosecutorial misconduct claim raised in his habeas petition. He asked that the district court revisit its denial of a COA on that claim because an intervening decision from this court, *Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005), "squarely rejected the very grounds on which [the district court] previously denied habeas relief and a COA."

The argument that forms the basis of petitioner's prosecutorial misconduct claim includes these comments made during closing argument:

> For Ronnie McCoy to get up here and lie and make all these things just fit in, it would really be just incredible, because he – I'll tell you, my impression of him was this. I believe he was truthful. I believe he got on the stand and bared all. I don't believe he was the most brilliant individual in the world. I believe he was the type of an individual that could have been led by someone like Donnie Johnson. I don't think he was as bad as they want to paint him. . . . I submit to you he got on the stand and bared all. Told you the truth. I don't know of any motive that he would have to lie.

Defense counsel did not object to these comments. Despite the lack of an objection, this issue was raised to the Tennessee Supreme Court on direct appeal and it ruled as follows:

It is insisted by counsel that the trial court erred in permitting the prosecuting attorney to express his personal opinion concerning the credibility of the witness Ronnie McCoy. This matter was not objected to at the time or pursued in the motion for new trial.

It is, of course, improper for an attorney to express his or her personal opinion in the course of final summation. *See State v. Hicks*, 618 S.W.2d 510 (Tenn.Crim.App. 1981). In the present case, however, the argument concentrated upon the evidence in the record concerning McCoy and his credibility and was made in response to attacks upon the witness by counsel for appellant in his closing argument. The form of the argument was in the nature of a summary to the jurors of the evidence in the record rather than personal opinion of the prosecutor concerning matters outside the record. In addition, the trial judge clearly charged the jurors that statements of counsel were not to be considered as evidence. We find no merit to this issue.

*Johnson*, 743 S.W.2d at 159.

The district court denied this claim when it first considered the habeas petition. It concluded that the decision of the Tennessee Supreme Court was "neither contrary to, nor an unreasonable application of, clearly established federal law." Assuming that the prosecutor's remarks may have been ill-advised, the district court noted that those remarks must "so infect the trial with unfairness as to make the resulting conviction a denial of due process."

The district court rejected this claim for a second time when it was raised in petitioner's second motion for equitable relief. As it did when denying the motion for equitable relief in appeal number 05-6925, the district court based its authority on Rule 60(b) rather than on any "inherent equitable power" conferred by Article III of the Federal Constitution.

In its order, the district court did not discuss the merits of petitioner's prosecutorial misconduct claim. Rather, it noted simply that "[b]oth this Court and the Sixth Circuit have previously denied Petitioner a COA on his prosecutorial misconduct claim." Thus, "it is clear that Petitioner's request for relief from judgment in the form of a COA is the equivalent of a second or successive habeas petition and must be dismissed for failing to comply with the gatekeeping requirements of 28 U.S.C. § 2244."

As we did in the companion appeal, we construe petitioner's notice of appeal in case number 06-6330 as an application for a COA. That application is denied. In his Rule 60(b) motion petitioner is attacking "[the substance of] the federal court's previous resolution of [the] claim *on the merits*." *Gonzalez*, 545 U.S. at 532. As recounted above, this claim has already been litigated and resolved. To the extent that petitioner seeks to argue that *Hodge* represents "a new rule of constitutional law," 28 U.S.C. § 2244(b)(2), he must first obtain leave from this court to file a successive application. 28 U.S.C. § 2244(b)(3)(A). He has not done so. Appeal number 06-6330 is dismissed.

## III.

In case number 05-6925, a certificate of appealability is **GRANTED** and the judgment of the district court is **AFFIRMED**. Case number 06-6330 is **DISMISSED** pursuant to 28 U.S.C. § 2244.

———————————

## DISSENT

———————————

CLAY, Circuit Judge, dissenting. This is the second time the majority has denied Petitioner the opportunity to have a hearing on allegations of very serious constitutional deprivations. In *Johnson v. Bell*, 344 F.3d 567 (6th Cir. 2003), the majority denied Petitioner an opportunity to have a hearing on whether his trial counsel's performance was constitutionally deficient in failing to properly investigate mitigating circumstances in the penalty phase trial. As the dissent noted at that time, "The record before the Court, although needing further factual development, provides clear indication that Petitioner's trial counsel failed in their responsibility to investigate and present mitigating evidence at Petitioner's penalty phase trial. Contrary to the majority's conclusion, it cannot be determined, based upon the present record, whether proper representation of Petitioner at the penalty phase trial would have resulted in a different outcome." *Id.* at 578 (Clay, J., dissenting). In that case, Petitioner was entitled to an evidentiary hearing on his ineffective assistance of counsel claim, just as he is on his claim of fraud on the court in this case.[1]

The district court in the instant case should have held an evidentiary hearing on whether the state committed fraud on the court in the initial habeas proceedings. The majority rejects Petitioner's allegations based on its assertion that Petitioner has failed to come forward with "clear and convincing" evidence of fraud on the court.[2]

———————————

[1] Not only is there a potential violation of Petitioner's right to counsel (*see Johnson*, 344 F.3d at 575 (Clay, J., dissenting)) and a potential *Brady* violation based on the withholding of evidence, but Petitioner's claim of prosecutorial misconduct should also succeed on the merits. The prosecutor's statements giving rise to the prosecutorial misconduct claim were inexcusable and clearly violated Petitioner's due process rights. The prosecutor improperly vouched during the trial that he believed McCoy "was truthful. I believe he got on the stand and bared all" and further that "I submit to you that he got on the stand and bared all. Told you the truth." These statements clearly run afoul of the principle that "[i]t is patently improper for a prosecutor . . . to comment on the credibility of a witness." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Despite the prosecutorial misconduct evident in this case, I will not address that claim because Petitioner seems unlikely to prevail on the claim for the procedural reasons set forth by the majority opinion.

[2] The issue of the procedural prerequisite for the granting of a certificate of appealability in regards to Rule 60 motions is in some flux. In *United States v. Hardin*, 481 F.3d 924, 926 (6th Cir. 2007), we found that a petitioner "must obtain a certificate of appealability before his appeal of the denial of his Rule 60(b) motion can be heard." In *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997), the Court

Notwithstanding the majority's contentions, Petitioner has undoubtedly raised sufficient questions which should entitle him to an evidentiary hearing on the issue. This is so because if Petitioner was convicted based upon false testimony which was the product of collusion between the prosecutor and the prosecutor's principal witness, then the false testimony would constitute fraud directed at the "judicial machinery" of the court sufficient to compromise the court's integrity. *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993) (noting that fraud on the court is a "fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication").

The circumstances surrounding Ronnie McCoy's initial testimony at Petitioner's trial strongly suggest that McCoy and the prosecution made some sort of deal to protect McCoy from incriminating himself. At the time of the murder, McCoy was on work release from incarceration on a burglary charge. McCoy initially denied knowing anything about the murder of Connie Johnson. Three weeks after the murder, he completely changed his story and came forward to implicate Petitioner. McCoy proceeded to tell police– and then testify under oath – that he discovered Connie Johnson's body, helped Petitioner clean the crime scene, and then disposed of the body in a parking lot. He decided to come forward, in his words, because he did not "need any more time."

Despite McCoy's acknowledgment of his role in disposing of Connie Johnson's body, and the possibility that he might have been involved in her murder, his work release status was not revoked. In fact, McCoy was paroled only two months later. While on parole, McCoy took the witness stand and testified under oath about his participation in helping to clean up the crime scene and dispose of the body of the murder victim. Even if one takes into account the possibility that McCoy arguably could have been coerced, it is nonetheless incredible to contend that a witness would give such

---

held that "district courts must be the initial decision-maker" in a certificate of appealability determination. However, *Hardin* postdates Petitioner's appeal to this Court, thereby possibly permitting us to excuse the failure to first seek a certificate of appealability in the district court. Since the majority in the instant case addressed the issue on the merits, it is not necessary to resolve this issue, and this dissent will likewise reach the merits.

incriminating testimony with no assurance of immunity from prosecution. As the Tennessee Supreme Court found in rejecting Petitioner's appeal: "In all events, however, [Petitioner and McCoy] collaborated, willingly or otherwise, in transporting the body of Mrs. Johnson in her 1981 Ford van from the sales office to a shopping center a few miles away. They also placed inside the van her broken spectacles, her shoes, her coat and some earrings which had become dislodged in her struggle for breath. They parked the van on the edge of a large shopping center and left it there." Later the court acknowledged that McCoy may have been an accomplice. *State v. Johnson*, 743 S.W.2d 154, 156-57 (Tenn. 1987).

Notwithstanding the risk McCoy took in providing this sworn testimony, the prosecutor and McCoy both assert in affidavits submitted to the district court that McCoy took this step without any deal or promises of immunity. The prosecutor acknowledged that McCoy's testimony "would have provided sufficient probable cause to obtain an indictment for improper disposal of a body, and possibly accessory after the fact to murder." The prosecutor further asserted, however, that he "felt it was unlikely that it could be proven that [McCoy's] participation [in the murder] was willing." (J.A. 186-87). The state's official position is that it had no leverage over McCoy, thereby impliedly suggesting that McCoy came forward and testified under oath to his participation in a murder with no assurances from the prosecutor about any future immunity. Furthermore, while it may have been a challenge for the prosecutor to prove McCoy's participation in the actual murder, it would have been equally difficult for the state to prove that Petitioner committed the crime without McCoy's testimony. Therefore, the prosecution was in the position where it needed McCoy's testimony to gain a conviction against Petitioner in the brutal murder of his wife. Nonetheless, the state asserts that it was able to obtain full participation from McCoy, a possible accomplice with a criminal history, without offering him any deal. At the very least, the prosecution's proposed version of events strains credulity; however, the submission of the prosecutor's and McCoy's affidavits in the habeas proceedings, without more, might be insufficient to prove that their actions constituted a fraud on the court – which is the

very reason that the interests of justice require an evidentiary hearing where witnesses can be subjected to cross-examination.

It is significant that Petitioner also obtained evidence that McCoy had told a very different story in another context. A 1988 presentence report in a separate case quotes McCoy as saying that he had received immunity from prosecution for testifying against Petitioner. In McCoy's affidavit presented in the initial habeas proceedings, he claims he does not know how the immunity statement got into his presentence report. Subsequent to the original habeas proceedings, Petitioner obtained a declaration from Wayne Morrow, the probation officer who prepared the presentence report. In the declaration, Morrow swears under penalty of perjury that the statement came from McCoy. Therefore, Petitioner has come forward with the sworn testimony of a person with no incentive to lie which states that McCoy had previously claimed he received immunity for testifying against Petitioner.

The district court – and now the majority – dismisses this evidence based on affidavits provided by the prosecutor, McCoy, and Petitioner's trial counsel. The affidavit from Petitioner's trial counsel does not buttress the prosecution's argument; the affidavit emphasizes that the "state made clear" that it would not prosecute McCoy. The affidavit does not make clear what was the basis for that assertion or how McCoy could risk admitting involvement in a murder without some guarantee that the prosecution would be true to its position. Furthermore, Petitioner's trial counsel's lack of knowledge about a deal would hardly be surprising. If there were a deal which the prosecutor was attempting to conceal, Petitioner's trial counsel would be the last person that the prosecutor would want to know about it. Although Petitioner's trial counsel attempted to question McCoy at trial about the existence of a deal that McCoy might have had with the prosecutor to provide testimony in exchange for the prosecutor's promise not to prosecute, McCoy simply denied that any deal had been agreed to.

The district court emphasized that McCoy and the prosecutor were the only ones with "contemporaneous personal knowledge concerning the matter," but they are also the people who would have the strongest motivation to conceal any deal that existed.

It seems extraordinary just to accept their affidavits as credible simply because they claimed to have had contemporaneous knowledge, particularly where McCoy has been inconsistent and contradictory over time as to whether he was promised immunity by the prosecutor.

Therefore, in considering McCoy's inconsistent positions and the other evidence of an undisclosed deal, the proper course would have been to hold an evidentiary hearing; and this Court should remand this case for such a hearing to be conducted. At such an evidentiary hearing, the district court could consider the testimony of the witnesses, including McCoy and the prosecutor, subject to cross-examination, and determine the credibility of the witnesses and whether the affidavits that were submitted in the initial habeas proceedings were fraudulent. If the district court finds the witnesses credible, it could then conclude that no deal was made, and thus no fraud on the court occurred.

An evidentiary hearing is assuredly a reasonable response to serious allegations of fraud on the court. This Court's most thorough evaluation of a Rule 60(b) motion based on fraud on the court took place in *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993). In that case, this Court had previously denied the habeas petition of Demjanjuk, an alleged Nazi war criminal. *See Demjanjuk v. Petrovsky*, 776 F.2d 571 (6th Cir. 1985). Subsequently, the Court became aware of possible exculpatory evidence that might not have been disclosed to Demjanjuk. Rather than simply conduct an evidentiary hearing, the Court then reopened proceedings and eventually took the much more resource-intensive step of convening a special master to "take testimony and prepare a report on the issue of whether failure of government attorneys to disclose exculpatory information in their possession constituted prosecutorial misconduct or fraud upon the court that misled the court into allowing Demjanjuk to be extradited." *Demjanjuk*, 10 F.3d at 339. Following the special master's report, the Court determined that fraud on the court had been committed and vacated its previous judgment allowing for extradition.

In this case, a remand for an evidentiary hearing is undoubtedly preferable to the majority's position that if the parties to an undisclosed deal continue to assert that no deal exists, it should be impossible for a petitioner to even get the chance to test their assertions by cross-examination. "A rule . . . declaring 'prosecutor may hide, defendant must seek' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). Quite simply, without a chance to cross-examine McCoy, the prosecutor, and possibly other witnesses, Petitioner could never prove the existence of a deal. Even though there may have been a deal between McCoy and the prosecution, as seems likely, apparently there is no quantum of evidence, circumstantial or otherwise, that could convince the majority that an evidentiary hearing is warranted.

The events surrounding McCoy's testimony, in addition to his statements to Morrow, raise a strong probability that a deal was reached that should have been disclosed in conformity with *Brady v. Maryland*, 373 U.S. 83 (1963). Our case law is abundantly clear that "even unspoken, tacit agreements or mutual understandings may constitute evidence favorable to the accused that must be disclosed." *Akrawi v. Booker*, 572 F.3d 252, 263 (6th Cir. 2009). This rule was emphasized in our *en banc* ruling in *Bell v. Bell*, 512 F.3d 223 (6th Cir. 2008). There, we did not find a *Brady* violation, but the prosecutor who may have made a deal specifically testified before the district court on the witness stand that no agreement of any kind had been made. If the prosecutor and McCoy so testify in this case, and the district judge were to credit that testimony, the matter would be settled in the prosecution's favor. Instead, the majority argues for allowing the prosecution to merely file unchallenged affidavits where the very nature of the evidence allegedly withheld prevents Petitioner – without the aid of the truth-seeking device of cross-examination – from discovering irrefutable proof that a deal existed. As the Supreme Court has noted, cross-examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).

Because the record before this Court indicates a very real possibility that McCoy and the prosecutor had, at a minimum "reached a mutual understanding, albeit

unspoken" that McCoy would not be prosecuted, *Bell*, 512 F.3d at 233, an evidentiary hearing should be held to determine whether the affidavits submitted in the initial habeas proceeding constituted a fraud on the court. Only in that way might we be assured that due process has been afforded, that justice has been done, and that we have avoided the consequences of a mistake, recognizing as we must in a death penalty case such as this that "death is special."

I therefore respectfully dissent.