# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-2480
LT Case No. 2011-CA-007065

———————————————

STOREY MOUNTAIN, LLC a/a/o
First Horizon Bank,

 Appellant,

 v.

ASHCO, INC., PI PROPRIETORS,
LLC, LOCK W. IRELAND, and
FLORIDA BANK OF
JACKSONVILLE,

 Appellees.

———————————————

Nonfinal appeal from the Circuit Court for Duval County.
Waddell A. Wallace III, Judge.

Paul A. Humbert, of Law Offices of Paul A. Humbert, P.L.,
Miami, for Appellant.

Bryan S. Gowdy and Nicholas P. McNamara, of Creed & Gowdy,
P.A., Jacksonville, and Morgan Ashurian, of Ashco, Inc.,
Jacksonville, for Appellee, Ashco, Inc.

No Appearance for Remaining Appellees.

October 3, 2025

JAY, C.J.

The trial court vacated a default judgment. Because the court did not abuse its discretion, we affirm.

I.

In 2013, Florida Bank of Jacksonville obtained a judgment against Lock Ireland for $322,474.40. Ireland made no payments on the judgment, which came to be held by Storey Mountain, LLC. By 2021, the balance grew to $472,966.02. Storey Mountain moved for a continuing writ of garnishment, suggesting that Ashco, Inc., may owe Ireland unpaid wages. The court issued the writ, which Ashco did not answer. Storey Mountain sent Ashco requests for admissions, asking Ashco to admit that it employed Ireland and owed him $472,966.02. Ashco did not respond.

Storey Mountain obtained a clerk's default. It then moved for a final judgment of garnishment against Ashco for $477,910.97. Ashco did not appear at the hearing. The court entered a judgment, which Storey Mountain served on Ashco.

Nine days later, Ashco moved to vacate the clerk's default and final judgment. It alleged that upon receiving the writ, Edward Ashurian (Ashco's CEO) telephoned Storey Mountain's counsel. He explained that Ashco no longer employed Ireland and did not owe him money. Ashurian further informed counsel that Ireland had recently died. Based on this conversation, Ashurian did not believe that Ashco needed to answer the writ.

Ashco claimed these facts showed excusable neglect. It also alleged that after receiving the judgment, it immediately engaged counsel to ensure that the matter would be handled properly. And it insisted that because it did not owe Ireland any money, it had a meritorious defense to the writ.

The court set a hearing, but it allotted only fifteen minutes amid a busy calendar. Realizing there were disputed issues that needed a longer evidentiary hearing, the court took Ashco's motion under advisement. In the months that followed, Ashco emailed the court's judicial assistant several times to request a case management conference. When it received no response, Ashco

2

wrote a letter to the court, which set an evidentiary hearing.

After the hearing, the court entered an order granting Ashco's motion. It found that Ashurian is seventy-six years old, and his native language is Farsi. "He speaks heavily accented English and sometimes does not comprehend nuances or details of spoken English." The court found that Ashurian told Storey Mountain's counsel "that Ireland no longer worked for Ashco, Ashco did not owe any money to Ireland and Ireland had recently died." Because of this discussion, "Ashurian believed that the garnishment was resolved and that Ashco did not need to file any further response to the writ." The court found that Ashurian's belief was credible.

The court determined there was "no evidence that Ashco received a service copy" of Storey Mountain's motion for default. Moreover, as reflected by the certificate of service, Ashco did not receive the default itself. Ashurian denied receiving Storey Mountain's motion for a final judgment or the notice of hearing on that motion. He testified that the "only two letters [he] received regarding the garnishment were the original notice and the final document."

The court found that when Ashurian received the judgment, he "immediately" gave it to his son "with directions to take the matter to Ashco's attorneys." Ashurian's son "corroborated his father's account." He "remembered hearing about the garnishment previously but thought the matter had been resolved." The final judgment "came to him 'completely out of the blue.'"

The court explained that to be eligible for relief, Ashco needed to show excusable neglect, a meritorious defense, and due diligence. On the first point, the court reiterated that "Ashurian was credible when he testified that, after his telephone call with Storey Mountain's attorney, he reasonably believed that no further response to the writ was required." In the court's view, it was understandable that "Ashurian could view a writ of garnishment as presenting an administrative or human resource issue very different from a summons and complaint alleging that Ashco owed a debt or was otherwise responsible for a business transaction." The court again noted that English is Ashurian's second language and found that "he may not have the same level of comprehension

3

of a conversation as one who is a native speaker." The court cited case law for the proposition that reasonable misunderstandings during settlement negotiations can qualify as excusable neglect.

Turning to the second element, the court found that Storey Mountain did not dispute that Ashco had a meritorious defense. "The records received in evidence show that prior to service of the writ, Ireland's business relationship with Ashco had concluded and Ashco did not owe any money or property to Ireland."

On the third element, the court found that Ashco "acted promptly in retaining legal counsel to seek relief," and that counsel timely filed a motion to vacate. It determined that the delay in securing a hearing was not Ashco's fault but was instead the product of the court's administrative oversight. Thus, the court found that Ashco acted with diligence in trying to vacate the judgment.

The court ended by observing that denying relief "would result in a significant forfeiture or sanction being imposed on Ashco, in an amount wholly disproportionate to the issues raised by the writ of garnishment." This outcome "would be a windfall" for Storey Mountain "based on an employee relationship that had been terminated and for which nothing was owed." The court found that implicit in Ashco's motion was a request for relief from the admissions, and that the "same grounds" that justified vacating the judgment "also justify relieving Ashco from the effect of its failure to respond to the request for admissions." For these reasons, the court granted Ashco's motion. Storey Mountain appeals.

II.

We review the court's ruling for an abuse of discretion. *Ocwen Loan Servicing, LLC v. Brogdon*, 185 So. 3d 627, 629 (Fla. 5th DCA 2016); *see also Bank of Am., N.A. v. Lane*, 76 So. 3d 1007, 1008 (Fla. 1st DCA 2011) ("A greater showing of abuse of discretion is needed to reverse the grant of a motion to vacate a default than to reverse the denial of such a motion."); *Gables Club Marina, LLC v. Gables Condo. & Club Ass'n*, 948 So. 2d 21, 23 (Fla. 3d DCA 2006) (explaining that because of the law's preference for deciding cases

4

on the merits, "the Florida Supreme Court has held that a trial court's vacatur of a default judgment should be reversed only if the vacatur constitutes a *gross* abuse of discretion" (citing *N. Shore Hosp., Inc. v. Barber*, 143 So. 2d 849, 852 (Fla. 1962))).

A.

A court may set aside a default judgment when the moving party shows: (1) excusable neglect in not responding on time, (2) a meritorious defense, and (3) due diligence in seeking relief after discovering the default. *Santiago v. Mauna Loa Invs., LLC*, 189 So. 3d 752, 758 (Fla. 2016). The second element is not at issue here, as there is no dispute that Ashco owed Ireland nothing.

At the outset, we reject Storey Mountain's argument that since Ashco did not attach its supporting affidavits to its motion, the motion was "a legal nullity." The court found that Storey Mountain was "served with and had copies of both affidavits" in 2022 when the court first tried to hold a hearing on Ashco's motion. The affidavits "provided the necessary verification for [Ashco's] allegations." Moreover, due to administrative errors by the court, the evidentiary hearing on the motion did not occur until 2024. Therefore, the court concluded that Ashco's delay in serving the affidavits did not prejudice Storey Mountain.

Storey Mountain notes that excusable neglect and due diligence must be shown by sworn evidence. *See Cedar Mountain Ests., LLC v. Loan One, LLC*, 4 So. 3d 15, 17 (Fla. 5th DCA 2009). "However, the Florida Rules of Civil Procedure clearly do not require the motion [to vacate] to be verified." *Id.* Indeed, they are explicit that unless "otherwise specifically provided" by the rules or statute, "every pleading or other document" of a represented party "need not be verified or accompanied by an affidavit." Fla. R. Civ. P. 1.030. And Rule 1.540—the predicate for Ashco's motion— does not require affidavits or verification. *See Cedar Mountain Ests.,* 4 So. 3d at 17 (holding that for this reason, a court errs by summarily denying a motion to vacate that alleges "a sufficient basis for relief").

5

B.

We now turn to the merits. "Excusable neglect is found where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry or any other of the foibles to which human nature is heir." *Brogdon*, 185 So. 3d at 629 (quoting *Bowers v. Allez*, 165 So. 3d 710, 711 (Fla. 4th DCA 2015)). As the trial court noted, reasonable misunderstandings include those arising in settlement negotiations. *See Gables Club Marina*, 948 So. 2d at 24; *see, e.g.*, *Weeks Cartage, Inc. v. CSX Transp.*, 547 So. 2d 237, 238 (Fla. 1st DCA 1989) (finding excusable neglect where a president's "apparent misunderstanding" of his phone call with the plaintiff's counsel led a corporation to believe that no further action was needed to respond to the plaintiff's claim).

Here, the court found that Ashurian testified credibly about believing that his phone call with Storey Mountain's counsel resolved the case. *See Rollins v. Rollins*, 336 So. 3d 1241, 1244 (Fla. 5th DCA 2022) (reiterating that this court will not "disturb the trial court's determination of credibility of the witnesses" (quoting *Finkelstein v. State*, 157 So. 3d 1085, 1087 (Fla. 1st DCA 2015))). The court determined that it was reasonable for Ashurian to view the writ—which was based on the unfounded theory that Ashco owed Ireland hundreds of thousands of dollars in unpaid wages— as "presenting an administrative or human resource issue very different from a summons and complaint." And it accepted Ashurian's testimony that he did not receive other documents in the case until the final judgment. *See Progressive Express Ins. Co. v. Camillo*, 80 So. 3d 394, 402 (Fla. 4th DCA 2012) (explaining that a party's denial that it received a document "creates a question of fact which must be resolved by the trial court" (quoting *Scutieri v. Miller*, 584 So. 2d 15, 16 (Fla. 3d DCA 1991))). On this record, Storey Mountain cannot show that the court erred by finding excusable neglect.

C.

Due diligence means that a party took "swift action" once it discovered a default. *Lazcar Int'l, Inc. v. Caraballo*, 957 So. 2d 1191, 1192 (Fla. 3d DCA 2007) (quoting *Westinghouse Credit Corp. v. Steven Lake Masonry, Inc.*, 356 So. 2d 1329, 1330 (Fla. 4th DCA

6

1978)). It "is a test of reasonableness," which "must be evaluated based on the facts" of a case. *Elliott v. Aurora Loan Servs., LLC*, 31 So. 3d 304, 308 (Fla. 4th DCA 2010). In making this evaluation, a court considers the extent of any delay from when the party discovered the default to when it sought relief, as well as the reasons for the delay. *Fla. Eurocars, Inc. v. Pecorak*, 110 So. 3d 513, 515–16 (Fla. 4th DCA 2013).

The court found that Ashco did not discover the default's existence until it received the final judgment. Ashco moved for relief nine days later. The court did not err by finding that this qualified as due diligence. *See, e.g.*, *Verijet, Inc. v. Vision Leasing 241, LLC*, 394 So. 3d 78, 81 (Fla. 3d DCA 2024) (holding that a party "acted with due diligence in retaining counsel and moving to vacate the default within two weeks of learning of the default judgment"); *Howard v. Gualt*, 259 So. 3d 119, 123 (Fla. 4th DCA 2018) (same result for nineteen days); *Gables Club Marina*, 948 So. 2d at 25 (eleven days).

D.

Finally, we echo the trial court's concern that denying relief would result in a windfall for Storey Mountain and a severe sanction for Ashco based on a debt that never existed. Storey Mountain suggests it was improper for the court to entertain these equitable considerations. But that view is at odds with the text and background of Rule 1.540(b).

Rule 1.540(b) allows a court to relieve a party from a judgment for certain reasons—like excusable neglect—and "upon such terms as are just." It is Florida's version of Federal Rule of Civil Procedure 60(b). *Ohio Cas. Grp. v. Parrish*, 350 So. 2d 466, 469 (Fla. 1977); *Gjokhila v. Seymour*, 349 So. 3d 496, 499 (Fla. 1st DCA 2022). Since the "rules are substantially the same," federal cases about Rule 60(b) inform our view of Rule 1.540(b). *Crocker Invs., Inc. v. Statesman Life Ins. Co.*, 515 So. 2d 1305, 1307 n.2 (Fla. 3d DCA 1987); *see also Vitiello v. State*, 281 So. 3d 554, 560 n.8 (Fla. 5th DCA 2019) ("When a Florida rule is based on a similar federal rule, we may look to federal cases as persuasive authority in the interpretation of the rule.").

Those cases confirm that Rule 60(b) is the modern embodiment of old common law equitable remedies. As Justice Scalia explained, Rule 60(b) "merely reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233–34 (1995) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)). Rule 60 abolishes writs of coram nobis, coram vobis, and audita querela, as well as bills of review and bills in the nature of bills of review. Fed. R. Civ. P. 60(e); *see also* Fla. R. Civ. P. 1.540(b) (same). Historically, courts of equity used such writs and bills to grant relief from judgments after a term of court had ended. *W. Va. Oil & Gas Co. v. George E. Breece Lumber Co.*, 213 F.2d 702, 704–05 (5th Cir. 1954). Rule 60 codifies and simplifies these archaic equitable remedies, putting an end to their procedural complexity while fully retaining their substance. *Matter of Brown*, 68 F.R.D. 172, 174 (D.D.C. 1975); *see also Sweet v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, No. 2:16-cv-225, 2019 WL 3306029, at *4 (D. Utah July 23, 2019) ("Rule 60(b)(1) relief is also equitable; indeed, Rule 60 replaced ancient equitable procedures.").

Given this history, it is unsurprising that federal cases have consistently affirmed that Rule 60(b) sounds in equity. *See, e.g.*, *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010) (characterizing Rule 60(b) as "inherently equitable in nature"); *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127 (2d Cir. 2009) ("The discretionary relief available under Rule 60(b) is equitable."); *Rhone Poulenc, Inc. v. United States*, 880 F.2d 401, 406 (Fed. Cir. 1989) ("The power to relieve a party from a final judgment or order is quintessentially and obviously a power to do equity and a court's decision on a 60(b) motion is governed by equitable principles."); *Assocs. Disc. Corp. v. Goldman*, 524 F.2d 1051, 1054 (3d Cir. 1975) ("It is clear . . . that equitable principles apply to the resolution of the issues in 60(b) cases."); *Di Vito v. Fid. & Deposit Co. of Md.*, 361 F.2d 936, 939 (7th Cir. 1966) ("Moreover, the relief provided by Rule 60(b) is equitable in character and to be administered upon equitable principles."); *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947) ("The proceeding by motion to vacate a judgment [under Rule 60(b)] is not an independent suit in equity but a legal remedy

in a court of law; yet the relief is equitable in character and must be administered upon equitable principles."). We hold that the same is true of Rule 1.540(b).

"This is not to say that final judgments should be lightly reopened." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). The need for "order and predictability in the judicial process calls for the exercise of caution." *Id.* "But there can be little doubt that" under Rules 60(b) and 1.540(b), courts have equitable power to vacate judgments in the appropriate circumstances. *See id.* (quoting *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949)). Were that not the case, the phrase "upon such terms as are just" would be an empty one. *See Olofson v. Olofson*, 625 S.W.3d 419, 434 (Mo. 2021) ("The plain and ordinary meaning of this language gives courts the discretion to fashion relief as equity demands."). Therefore, the trial court rightly considered the equitable dimensions of Ashco's motion.

## III.

After finding excusable neglect, a meritorious defense, and due diligence, the trial court did not abuse its discretion by vacating a default judgment that would have required Ashco to pay nearly half a million dollars for a debt that it never owed. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) (holding that a court abuses its discretion only when it adopts a position that no reasonable person would take).

AFFIRMED.

SOUD and MACIVER, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

9