# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### March 4, 2015 Session

## STATE OF TENNESSEE v. RICKEY ALVIS BELL, JR.

**Automatic Appeal from the Court of Criminal Appeals**
**Circuit Court for Tipton County**
**No. 6664      Joe H. Walker III, Judge**

---

**No. W2012-02017-SC-DDT-DD – Filed September 10, 2015**

---

SHARON G. LEE, C.J., concurring in part and dissenting in part.

I concur with the majority's holdings as to the trial court's denial of Mr. Bell's motion to strike the death notice based on intellectual disability; the constitutionality of Tennessee Code Annotated section 39-13-203 that prohibits the execution of any intellectually disabled person; and the trial court's denial of Mr. Bell's motions for mistrial. I agree with the majority's conclusion that the trial court erred by refusing to allow Mr. Bell to introduce evidence that Rick Harris, the victim's husband, was having an affair with his ex-wife at the time the victim was murdered. However, I disagree that the error was harmless. In my view, the State failed to demonstrate beyond a reasonable doubt that this error did not affect the outcome of the trial. Because Mr. Bell was deprived of his constitutional right to present a defense and the State failed to show that the error did not affect the verdict, Mr. Bell is entitled to a new trial. For these reasons, I respectfully dissent from the majority's holding that Mr. Bell is not entitled to a new trial and would pretermit the remaining issues.

A jury convicted Mr. Bell of two alternative counts of first degree felony murder, one count of especially aggravated kidnapping, and one count of aggravated sexual battery and sentenced him to death. There was no confession. There was no evidence Mr. Bell had a motive to kill the victim. There were no eyewitnesses to the murder. The victim's death was brutal and physically violent. She had blood under her fingernails and one of her fingernails was torn off in the struggle, but Mr. Bell had no scratches or wounds.

The evidence against Mr. Bell was not overwhelming, which makes the fact that Mr. Bell was denied the opportunity to develop his defense theory—that someone else killed the victim—particularly troubling. There was evidence that placed Mr. Bell near the victim's home at approximately 1:30 p.m. on the day of the murder, and no one heard from the victim after that point. However, no precise time of death could be established for the victim. A handgun replica cigarette lighter bearing Mr. Bell's DNA and a condom containing Mr. Bell's semen were found approximately one hundred feet from the victim's body and near a broken tree branch containing hairs consistent with that of the victim. However, neither of these items bore the victim's DNA, and there was no proof as to how long those items had been at that location. Moreover, Mr. Bell's DNA was not found on the victim's body. The victim appeared to have died as a result of being kicked and stomped, yet the police failed to test the shoes of Mr. Bell or anyone else for evidence. Many people, including neighbors, family members, and police personnel, walked around the house and woods before and after the victim's body was found, thus diminishing the evidentiary value of any physical evidence found at the crime scene.

In his defense, Mr. Bell attempted to present proof that Mr. Harris was having an affair with his ex-wife at the time of the murder, thus giving him a possible motive to kill his wife or have her killed. At the beginning of Mr. Harris's cross-examination, defense counsel asked, "What's a Frayser?" The State objected on relevance grounds and, in a sidebar conference, explained to the trial court that "a Frayser" was the code name for sex invented by Mr. Harris and his ex-wife after meeting once for a tryst in the area of Frayser, Tennessee. On the day of the murder, Mr. Harris sent his ex-wife four text messages for the purpose of arranging to meet later that same night for "a drink, a dinner, and a Frayser," even though he testified that during the same day, he had been too busy working to call his wife more than once. Defense counsel wished to introduce this evidence through Mr. Harris, explaining that Mr. Harris had testified on direct examination about how much he loved his wife, even though at the time of her murder he was having an extramarital affair. Defense counsel argued that, in addition to affecting Mr. Harris's credibility, evidence of the affair would serve as a motive for Mr. Harris to either kill his wife or have her killed. Defense counsel asserted that this made the evidence extremely relevant.

The trial court conducted a hearing outside the jury's presence to consider Mr. Harris's testimony. In the hearing, Mr. Harris testified that he had been having an affair with his ex-wife, but denied that he wanted to reconcile with her. When defense counsel asked whether the affair with his ex-wife had been his first affair, Mr. Harris, who had been married three times, responded that he had been cheating on his wife all his life. At the conclusion of the jury-out hearing, the trial court sustained the State's objection and precluded the defense from questioning Mr. Harris as to his extramarital affair.[1]

---

[1] Although it was not challenged on appeal, Mr. Bell attempted to introduce similar evidence through the ex-wife's testimony. That testimony was excluded by the trial court.

The Defendant argues that the trial court's exclusion of the testimony regarding the affair deprived him of his constitutional right to a meaningful opportunity to present a complete defense, a fundamental element of due process. *See Washington v. Texas*, 388 U.S. 14, 17-19 (1967). The right to explore witness bias and the right to present a complete defense are fundamental constitutional rights. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (recognizing the right to explore witness bias as fundamental); *Washington*, 388 U.S. at 19 (recognizing the right to present a complete defense as fundamental). As the majority opinion correctly concluded, the trial court's omission of evidence of the affair was constitutional error because the exclusion deprived Mr. Bell of his right to present a complete defense, as guaranteed by the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *See State v. Brown*, 29 S.W.3d 427, 432 (Tenn. 2000).

In reviewing an error by the trial court, we must first determine the nature of the error so that we can apply the proper legal standard. *See State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). There are three types of errors: structural constitutional errors, non-structural constitutional errors, and non-structural, non-constitutional errors. Structural constitutional errors—those that compromise the integrity of the judicial process itself—warrant automatic reversal. These errors are not amenable to harmless error review. 3B Charles Alan Wright, Nancy J. King & Susan R. Klein, *Federal Practice and Procedure* § 855 (3d ed. 2004); *see, e.g.*, *United States v. Gonzalez–Lopez*, 548 U.S. 140, 150 (2006) (violation of the right to counsel warranting reversal); *Price v. Georgia*, 398 U.S. 323, 331 (1970) (violation of defendant's double jeopardy right warranting reversal); *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) (violation of the right to have the case heard in a community in which defendant can receive a fair trial warranting reversal). Non-structural constitutional errors, such as those involving the erroneous exclusion of evidence, are presumed to warrant reversal of a judgment and a new trial, but reversal is not automatic. *See State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003). Upon a finding of non-structural constitutional error, the burden shifts to the State to demonstrate harmlessness, and the error will result in reversal unless this Court is convinced beyond a reasonable doubt that the error did not affect the outcome of the trial. *Id.* (quoting *State v. Harris*, 989 S.W.2d 307, 314-15 (Tenn. 1999)); *see also State v. Rice*, 184 S.W.3d 646, 673-74 (Tenn. 2006) (applying non-structural constitutional harmless error analysis to an erroneous omission of evidence). Non-structural, non-constitutional errors are governed by Tennessee Rule of Appellate Procedure 36(b), which requires the defendant to show that the error more likely than not affected the outcome or caused prejudice to the judicial process. *Rodriguez*, 254 S.W.3d at 371-72.

The deprivation in this case—exclusion of evidence that supported a third-party defense—was a non-structural constitutional error. *See Powers*, 101 S.W.3d at 397. The State, not the defendant, had the burden to show that the constitutional error was harmless. *Harris*, 989 S.W.2d at 314; *see also* 3B Charles Alan Wright, Nancy J. King & Susan R. Klein, *Federal Practice and Procedure* § 855 (3d ed. 2004) ("The test . . . for

determining when a constitutional error is harmless is more exacting than the test for harmlessness of errors that are not of constitutional dimension.")

In any harmless error analysis, an appellate court should refrain from merely calculating whether sufficient evidence exists to support the conviction. *State v. Sexton*, 368 S.W.3d 371, 429 (Tenn. 2012). It is a well-settled tenet of Tennessee jurisprudence that "the line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict, beyond a reasonable doubt." *Delk v. State*, 590 S.W.2d 435, 442 (Tenn. 1979); *see also State v. Copeland*, 226 S.W.3d 287, 302-03 (Tenn. 2007); *State v. Denton*, 149 S.W.3d 1, 15 (Tenn. 2004); *Spicer v. State*, 12 S.W.3d 438, 447-48 (Tenn. 2000); *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999). Considering the whole record, "[t]he more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome on its merits." *State v. Dotson*, 254 S.W.3d 378, 388 (Tenn. 2008) (alteration in original) (quoting *State v. Toliver*, 117 S.W.3d 216, 231 (Tenn. 2003)); *see also State v. Shirley*, 6 S.W.3d 243, 250 (Tenn. 1999) (remanding for new trial because, although the evidence was sufficient to sustain the defendant's conviction, the evidence was clearly not overwhelming in light of the error at trial).

The State asserts that excluding the evidence of the affair was not error, and even if it were error, the evidence was not critical to the defense. The State argued in its brief that the evidence of Mr. Harris's affair "would have had little, if any, probative value in implicating Mr. Harris in the victim's murder." This assertion is contrary to case law and basic common sense. Evidence of an extramarital affair, as a powerful disruptor of family life, is highly probative. At trial, extramarital affairs can not only provide a motive for murder, but can also provide perspective and "explain the context surrounding the victim's homicide." *State v. Caronna*, No. W2013-00845-CCA-R3-CD, 2014 WL 6482800, at *42 (Tenn. Crim. App. Nov. 18, 2014) (finding the probative value of evidence indicating a husband's extramarital affair was not outweighed by the danger of unfair prejudice and that the evidence was relevant to the issues of motive and intent as well as to help explain the marital relationship). This context is important, not only in cases of spousal homicide, but also in cases where spousal homicide is an alternative theory of the crime presented by defense counsel. Proof of a defendant's extramarital conduct has been held to be admissible for non-propensity purposes in the prosecution of spousal homicide. *See State v. Johnson*, 743 S.W.2d 154, 158 (Tenn. 1987) (holding evidence of defendant's extramarital affair was admissible to establish motive to kill wife and to explain the state of the couple's relationship); *State v. Cartmell*, No. M2012-01925-CCA-R3-CD, 2014 WL 3056164, at *18-19 (Tenn. Crim. App. July 7, 2014) (concluding that evidence of defendant's communications with other women before and after his wife's death was relevant to the couple's relationship and admissible to show motive); *State v. March*, 395 S.W.3d 738, 783-84 (Tenn. Crim. App. 2011) (concluding that the trial court did not abuse its discretion in admitting evidence of

defendant's prior infatuation with his co-worker because this was relevant to show motive for wife's murder); *State v. Brock*, 327 S.W.3d 645, 703-04 (Tenn. Crim. App. 2009) (affirming defendant's conviction for the first degree murder of his wife and finding that evidence of extramarital affair reflected a possible motive for murder); *see also United States v. Russell*, 971 F.2d 1098, 1106-07 (4th Cir. 1992) (upholding the admission of extramarital sexual affairs evidence); *People v. Smith*, 203 P. 816, 821 (Cal. Dist. Ct. App. 1921) ("No rule is more firmly established than that, upon the trial for murder of husband or wife, evidence tending to show illicit relations of the accused with another is admissible to show lack of love and affection for the defendant's lawful spouse."); *Givens v. State*, 546 S.E.2d 509, 512 (Ga. 2001) (holding that evidence of a "close relationship" between defendant and a man other than her husband was relevant to the homicide and therefore admissible); *Porter v. State*, 91 N.E. 340, 342-43 (Ind. 1910) (finding that evidence of an extramarital affair "would at least tend to show lack of affection and regard upon [the defendant's] part for his wife and disregard of his conjugal relations"), *overruled on other grounds by Robinson v. State*, 317 N.E.2d 850 (Ind. 1974); *Andrew v. State*, 164 P.3d 176, 191 (Okla. Crim. App. 2007) (upholding evidence of defendant's extramarital sexual affair as relevant to prove motive); *Commonwealth v. Heller*, 87 A.2d 287, 289 (Pa. 1952) (approving the use of evidence of adultery to show motive for murder).

The State points to the fact that Mr. Bell was permitted to ask Mr. Harris about whether he sent text messages to his ex-wife and his discussion with her regarding her testimony at trial. However, this does not demonstrate that the exclusion of the evidence was harmless beyond a reasonable doubt. Without evidence of the affair, Mr. Bell was deprived of the opportunity to argue an alternative theory of the crime. Defense counsel was precluded from positing a series of hypothetical scenarios for the jury: that the victim's husband wanted to continue his affair with his ex-wife and needed to remove the victim from the equation, or that the victim had discovered the affair and she and her husband fought, explaining the scratches on his arm. This evidence alone would not have been sufficient to convince a jury that Mr. Harris killed his wife or had her killed. But Mr. Bell did not have to prove Mr. Harris committed the crimes. Mr. Bell only had to create reasonable doubt of his own guilt in the minds of the jury.

The majority correctly notes the relevant factors that should be considered in deciding whether the erroneous exclusion of defense proof was harmless beyond a reasonable doubt, including (1) the importance of the proof to the defense's case, (2) the extent to which the excluded proof was cumulative, (3) the extent of other evidence corroborating or contradicting the excluded proof, and (4) the overall strength of the State's case. *See Momon v. State*, 18 S.W.3d 152, 168 (Tenn. 1999); *see also Van Ardsall*, 475 U.S. at 684.

In *State v. Rice*, 184 S.W.3d 646, 670-71 (Tenn. 2006), we applied similar factors in determining whether an erroneous curtailment of cross-examination and exclusion of testimony was harmless beyond a reasonable doubt. In finding the error harmless, we relied upon the fact that (1) the witness was not the only person who had incriminated the defendant; (2) most of the witness's testimony that the defendant sought to introduce through cross-examination was corroborated by other witnesses, including the defendant's testimony; and (3) the overall case against the defendant was strong and included a confession by the defendant to police describing the details of the murder. *Id.* at 671. Based on these factors, it was clear in *Rice* that the constitutional error was not of great consequence in light of the strong evidence supporting the prosecution's case. *Id.*

Mr. Bell's case is different. An application of these factors illustrates the significance of the constitutionally erroneous decision to exclude evidence of Mr. Harris's extramarital affair. First, proof of the extramarital affair was crucial to Mr. Bell's case. The evidence would have served to implicate an alternative perpetrator of the murder by demonstrating a potential motive, and this could have raised reasonable doubt in the jurors' minds as to Mr. Bell's guilt. However, the exclusion of this evidence compromised Mr. Bell's opportunity to present this defense and offer an alternative theory of the case that was not far-fetched. Second, the evidence of the extramarital affair, which the defense sought to bring out on cross-examination of Mr. Harris, was not cumulative, but unique. The best person the defense could cross-examine about Mr. Harris's alleged motive to kill his wife was Mr. Harris. Third, in a jury-out hearing, Mr. Harris's ex-wife corroborated Mr. Harris's testimony as to the affair, and this evidence was not contradicted. Fourth, the evidence against Mr. Bell is far from overwhelming. The State's case against Mr. Bell is not weak simply because it is based on circumstantial evidence. Rather, the State's case is weak in addition to being circumstantial. Moreover, the record contains evidence that is inconsistent with the State's theory, including the facts that: (1) the husband's DNA was the only foreign DNA found on the victim; (2) the condom recovered from the woods contained Mr. Bell's DNA on the outside, but not the victim's; (3) the victim had blood under her fingernails; (4) the husband had scratches on his hands and arms; (5) no scratches were seen on Mr. Bell; (6) the time of the victim's death could not be precisely determined; (7) there was testimony that Mr. Harris had tried to influence his ex-wife's testimony; and (8) Mr. Bell had no apparent reason to kill the victim.

Unlike in *Rice*, where the defense was simply trying to establish the bias of a witness through redundant evidence, Mr. Bell was prevented from presenting unique evidence that was crucial to his theory of the case. This theory involved an unfaithful husband who had been cheating on his wife with his ex-wife, had arranged multiple sexual encounters with the ex-wife, and, on the day of the murder, set up another such encounter for that night. Evidence of this affair was key to offering a plausible motive for someone other than Mr. Bell to kill the victim or arrange to have her killed. While a number of witnesses established an alibi for Mr. Harris, evidence of Mr. Harris's

extramarital affair might have affected the credibility of Mr. Harris and these alibi witnesses in the eyes of the jury, and this could have given the alibi evidence less weight. Further, the fact that Mr. Harris might have had an alibi does not forestall the possibility that Mr. Harris hired someone to carry out the murder, which would seem more plausible if the jury had heard evidence of Mr. Harris's extramarital affair. Thus, not only did the evidentiary exclusion preclude Mr. Bell from offering an alternative theory of the case, but it undermined his opportunity to rebut, through his alternative theory, other points in the prosecution's case.

I cannot agree that other evidence introduced at trial sufficiently alerted the jury to Mr. Bell's defense theory that all was not right between Mr. Harris and the victim. Mr. Harris's statement on cross-examination that it would seem natural for him to be the prime suspect in his wife's murder was not sufficient to convey to the jury that Mr. Harris and the victim were having marital problems. This statement was made after Mr. Harris had already been asked on direct examination: "Mr. Harris, I don't mean to be indelicate, and I don't mean to seem insensitive. But you understand that often the first suspect in the death of a spouse or a girlfriend or a boyfriend is the significant other?" Thus, any reference to Mr. Harris being the prime suspect was a statement about a common assumption in murder trials—that a husband is often a suspect in his wife's murder—and did not tell the jury anything about the facts of this case. Without evidence of the affair, Mr. Bell could only insinuate at trial that Mr. Harris perhaps attempted to influence his ex-wife's testimony and that he sent her text messages about something not work-related, but nothing else. This evidence was not sufficient to alert the jury to Mr. Bell's defense theory.

The trial court, by excluding evidence of the extramarital affair, denied Mr. Bell the opportunity to present a defense that someone else killed the victim or arranged her murder. When considering this constitutional error amidst the weak circumstantial evidence against Mr. Bell, I am convinced that the State has not carried its burden of demonstrating that the error in this case was harmless and did not affect the outcome of the trial.

For the reasons stated above, I would grant Mr. Bell a new trial. Justice Wade has authorized me to state that he joins in this opinion.


                                              _____
                                              SHARON G. LEE, CHIEF JUSTICE